IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE HEATING,         *
PIPING AND REFRIGERATION
PENSION FUND, et. al.,           *

        Plaintiffs,
  v.                           *     CIVIL NO. ELH-13-01570

                              *
AIR SPECIALTIES, INC.,
                              *
        Defendant
                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by plaintiffs, Trustees of the Heating, Piping and Refrigeration Pension Fund, Medical Fund, Training Fund, M. Eddies Moore Scholarship Trust Fund, Industry Promotion Fund, Communications and Productivity Fund; Steamfitters Local 602 Retirement Savings Fund; Trustees of the International Training Fund (collectively "benefit fund plaintiffs"); and Steamfitters Local Union No. 602, for an entry of default judgment against defendant, Air Specialties Inc., pursuant to Federal Rule of Civil Procedure 55(b)(2) for failure to appear, answer, plead, or otherwise defend in this matter. (ECF No. 6). For the reasons discussed herein, the undersigned recommends that the plaintiffs' motion be GRANTED.

1

## I. Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987).

The Court must also determine whether plaintiff has alleged legitimate causes of action. In reviewing plaintiffs' Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780–81 (4th Cir. 2001). It however remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp.2010) ("[L]iability is not deemed established simply because of the default ... and the Court, in its discretion, may

require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780–81. Unlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. Credit Lyonnais Secs.(USA), Inc.v. Alcantara, 183 F.3d 151, 154 (2nd Cir.1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. ElBatrawi, 524 F.3d 907, 917 n. 11 (8th Cir.2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C.2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

## II. Preliminary Factors

The Clerk of Court having filed entry of default on September

12, 2013 (ECF No. 7), the undersigned concludes that the procedural requirements for entry of default judgment have been met. Moreover, because the defendant has failed to file any responsive pleadings or otherwise show cause as to why default should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73. Further, defendant's failure to appear deprived plaintiffs of any other means of vindicating their claim and plaintiffs would be prejudiced if default is not granted.

### III. Analysis

A. **ERISA Claims**

Plaintiffs bring the instant action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, and the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185. (ECF No. 1). They move to collect unpaid contributions, liquidated damages, interest, attorneys' fees, and costs that they allege are owed as a result of the defendant's failure to make timely contributions to benefit fund plaintiffs per its Labor Agreement with the Union. (ECF No. 7-2).

4

**Count I: Unpaid Contributions**

In Count I of their complaint, plaintiffs allege that defendants failed to remit contributions to benefit fund plaintiffs from January 2013 to April 2013. (Id. at ¶ 18). While defendant ultimately paid the April 2013 contributions after this action was filed, plaintiffs aver that the contributions for January 2013 through March 2013 remain outstanding. (ECF No. 6-1, 5).

ERISA § 502(a)(3) provides that a civil action may be brought by a "participant, beneficiary or fiduciary" to "obtain appropriate equitable relief ... to redress ... violations or ... to enforce any provisions" of the statute or terms of the plan. 29 U.S.C. § 1132(a)(3). ERISA § 515 provides that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In a collection action based on section 515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents. Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997).

Benefit fund plaintiffs are benefit plans organized under the provisions of ERISA. (ECF No. 1, ¶¶ 1-8). Benefit fund plaintiffs are governed by the terms and conditions of their respective Restated Agreements and Declarations of Trust. (Id.). The funds are financed by contributions made by defendant under the terms of its collective bargaining agreements with plaintiff Local 602. (ECF No. 6-3, ¶¶ 7-9).

Plaintiffs allege that defendant is a Maryland Corporation that transacts business in the District of Columbia and the Washington, D.C. metropolitan area as a contractor or subcontractor in the pipefitting and steam-fitting industry. (ECF No. 1, ¶¶ 10-11). Defendant's collective bargaining agreement with Local 602 requires that contributions and other payments be made to the Benefit Fund Plaintiffs for each hour of work performed by defendant's employees. (ECF No. 6-3, 4). Contributions are recorded in a "contribution report" submitted by defendant. (Id. at 15). The report includes the number of hours worked by each employee, which is then multiplied by the applicable rates in the Collective Bargaining Agreement. (Id. at 14). Contributions are due on the fifteenth day of each month. (Id.).

Plaintiffs claim that these payments are outstanding for the months of January 2013 - March 2013. They have provided the Court with the collective bargaining agreement, in which

6

defendant agrees to make contributions to the plaintiff funds.
(ECF No. 6-3, 67-77). They also submit the declaration of
Joseph C. Savia, Sr., the Trustee and Business Manager for Local
602. (ECF No. 6-3, 5). Mr. Savia states that defendant
"provided contribution reports to the Benefit Funds for the work
months of January 2013 through March 2013, but failed to remit
contributions to the Benefit Funds for these months when due."
(Id. at 4). The Court finds that these uncontested facts amount
to a legitimate cause of action for unpaid contributions under
ERISA § 502 and 515.

**Count II: Payroll Audit**

Plaintiffs also request, in Count II of their complaint, an
audit of Air Specialties payroll records to "determine whether
the Defendant is properly reporting the number of employees
working under the Collective Bargaining Agreements, the number
of hours worked by employees, the correct contribution rates,
and the amounts owed to each of the Benefit Fund Plaintiffs."
(ECF No. 1, ¶ 23). The Trust Agreements provided to the Court
state that the Trustees "may, at any time, designate a qualified
representative to conduct an audit of the payroll and wage
records . . . to determine whether Employer is making full
payments." (ECF No. 6-3, 18, 26, 35, 47, 53). The agreements
also provide for the "enforcement of payment of reasonable

7

expenses incurred by the Trust Fund in enforcing the payment of contributions due," including "accountants fees."  (Id. at 20-21, 28, 37, 49, 55).

An audit has been found to be part of the "appropriate equitable relief" provided for under ERISA § 502.  See Fanning v. Big Warrior Corp. 659 F. Supp. 2d 182, 184-85 (D.D.C. 2009). As such, and because an audit is clearly provided for under the Trust Agreements, the Court finds that plaintiffs are entitled to an audit of defendant's records at defendant's expense.

**Count IV[1]: Bond Guarantee**

In Count IV of their complaint plaintiffs state that "[p]ursuant to the Collective Bargaining Agreements and Restated Agreements and Declarations of Trust, Air Specialties agreed to provide a bond to the Plaintiffs."  (ECF No. 1, ¶ 30). Plaintiffs further state that defendant failed to provide the bond, in violation of the Collective Bargaining Agreement and Restated Agreements and Declarations of Trust.  Plaintiffs ask that the Court enjoin the defendant from violating the agreements in failing to provide the requisite bond.

In calculating the bond plaintiffs cite to the collective bargaining agreement, which states that the "bond obligation shall be in the amount of three times the average monthly

---

[1] Plaintiffs seek to dismiss Count III, which requests a "working assessments and other amounts due," without prejudice.  (ECF No. 6-1, 9).

8

contributions owed by the employer under the collective bargaining agreement for the previous twelve months, plus 20 percent, and then rounded up to the nearest increment of $5,000. (ECF No. 6-3, 70). Plaintiffs have provided a chart which details the monthly payments to the funds from July 2012 through July 2013. (Id. at 82). The average of these payments, multiplied by three, plus 20%, is calculated to be $77,971.97. (Id.). Rounded up to the nearest increment of 5,000 this becomes $80,000. (Id.). The Court finds that plaintiffs have properly stated a claim for an affirmative injunction bond in the amount of $80,000. See Solis v. Malkani, No. WDQ-00-3491, 2010 U.S. Dist. LEXIS 4295 (D. Md. Jan. 20, 2010)(approving a supersedeas bond, and finding that the payment of a bond in an ERISA case is as "affirmative injunction" because it was directed to the defendants, was enforceable by contempt, and was designed to protect the beneficiaries of the plan.).

**B. Damages**

Plaintiffs base their claim for damages on ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), which provides:

> (2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan-
>     (A)the unpaid contributions,
>     (B)interest on the unpaid contributions,
>     (C)an amount equal to the greater of-

> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under
> the plan in an amount not in excess of 20
> percent (or such higher percentage as may be
> permitted under Federal or State law) of the
> amount determined by the court under
> subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the
> action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the
> court deems appropriate.

(ECF No. 6-1, 6).

The Benefit Fund Plaintiffs' Trust Agreements provide that liquidated damages shall be assessed at a rate of twenty percent. The Collective Bargaining Agreement provides for liquidated damages at a rate of fifteen percent. (ECF No. 6-3, 11-12, 20, 27-28, 36, 48, 54). Plaintiffs have opted to use this lower 15% rate.

The collective bargaining agreement provides for interest at a rate of 10% per annum. (Id. at 76). The Restated Agreements and Declarations of Trust use a ten percent rate. (Id. at 11-12, 20, 27-28, 36, 48, 54). This ten percent rate is also used in the Employer Guidelines. (Id. at 60).

Plaintiffs have submitted a Summary of Damages which details damages and attorneys' fees calculations. According to the summary, Benefit Fund Plaintiffs were owed $22,425.29 in unpaid contributions for January 2013, $20,585.92 for February 2013, and $19,155.37 for March 2013, for a total of $62,166.58 between January 2013 and March 2013. (ECF No. 6-3, 86).

Plaintiffs add fifteen percent for liquidated damages, and ten percent interest, for a final total of $74,243.05. (Id.). In support of these calculations, plaintiffs provide the declaration of Joseph R. Swann, principal of the Benefits Administration Corporation, which acts as administrator for the Local 602 Benefit Funds. (Id. at 83). Attached to Mr. Swann's declaration are the contribution reports submitted to plaintiffs by defendant for the months of January, February, and March 2013. (ECF No. 6-3, 89-93). These reports were used by plaintiffs to calculate the contributions due for these months. The Court has reviewed these documents and found that they correspond to the damages calculation described above. As such, the Court finds that plaintiffs have properly stated a claim for $74,243.05 in damages.

### C. Attorney's Fees

Both the Collective Bargaining Agreement and Benefit Funds Plaintiffs' Restated Agreements and Declarations of Trust require that an employer who fails to pay contributions timely pay reasonable attorneys' fees and court costs. (ECF No. 6-3, 11-12, 20, 27-28, 36, 48, 54). Plaintiffs provide a declaration by R. Richard Hopp, of O'Donoghue & O'Donoghue LLP, detailing the hours worked and amount charged in fees. (Id. at 94.). Two lawyers worked a total of eight hours for this matter. The

majority of the work—6.75 hours—was performed by Andrew Kesler, a lawyer with one year of experience. (ECF No. 6-3, ¶4). Richard Hopp, who has over twenty years of experience, worked on the matter for 1.25 hours. Both attorneys billed at a rate of $225.00 an hour.

Under this Court's Local Rules' guidelines regarding hourly rates for the determination of attorneys' fees, a lawyer admitted to the bar for less than five years should bill at a rate of $150-190 an hour. <u>See</u> Local Rules, App. B(3)(d). Mr. Kesler billed at significantly above that range with only one year of experience. As such, the Court finds these charges excessive and will instead award fees at a rate of $150.00 an hour, in keeping with Mr. Kesler's level of experience. The rate for Mr. Hopp, a substantially more experienced attorney, is proper. As such, Mr. Kesler's charges amount to $1,012.50 (6.75 x $150.00), and Mr. Hopp's charges amount to $281.25 (1.25 x $225), for a total of $1293.75. Mr. Hopp also states that plaintiffs incurred costs of 490.00 for filings fees and service of process. (ECF No. 6-3, ¶5).

## IV. Conclusion

The undersigned judge finds that an entry of default judgment is appropriate and therefore recommends that default judgment be entered and the following relief be granted:

12

1. A bond in the amount of $80,000;

2. Unpaid contributions of $62,166.58;

3. Liquidated damages of $9,324.99;

4. Pre-Judgment Interest of $2,751.48;

5. Attorneys' fees of $1,293.75 and costs of $490.00.

In addition, the Court recommends that defendant be ordered to submit all payroll books and records to the Benefit Fund Plaintiffs for an audit, at defendant's expense, for the period of May 1, 2010 through and including August 31, 2013. Finally, the Court dismisses Count III of plaintiffs' complaint without prejudice.

Date: 12/23/13 /s/
Susan K. Gauvey
United States Magistrate Judge